UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **LORIE A. HAIGHT,** | Case No. 6:15-cv-02149-YY |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

**YOU, Magistrate Judge:**

Plaintiff Lorie A. Haight ("Haight") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 USC §§ 401–33, and Supplemental Security Income ("SSI") under Title XVI of the Act. 42 USC §§ 1381–83f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 USC §§ 405(g) and 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). ECF #13. For the following reasons, the Commissioner's decision is AFFIRMED.

///

///

///

1 – OPINION & ORDER

## ADMINISTRATIVE HISTORY

On November 20, 2012, Haight filed applications for DIB and SSI. Tr. 179, 181.[1] Her alleged onset date of disability is April 1, 2009. Tr. 179, 181. Both claims were denied initially and on reconsideration. Tr. 117, 121, 127, 130. A hearing was held before Administrative Law Judge ("ALJ") Robert Spaulding on June 11, 2014. Tr. 26, 149. The ALJ issued a decision on September 26, 2014, finding Haight was not disabled under the Act. Tr. 9, 20–21. The Appeals Council denied Haight's request for review on September 11, 2015. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision subject to review by this court. 20 CFR §§ 404.981, 422.210. The time period at issue is April 1, 2009, through December 31, 2014. Tr. 12.

## BACKGROUND

Born in 1971, Haight was 43 years old at the time of the disability hearing. Tr. 28, 179. She received a GED in 1991. Tr. 209. Her past relevant work experience is in janitorial services. Tr. 209. Haight alleges she is unable to work due to: a back injury, depression, deafness in her right ear, bi-polar disorder, major back problems, and hepatitis C. Tr. 208. Her treating physician diagnosed her with: degenerative disc disease/scoliosis; arthritis in the hands, back, and neck; mild-to-moderate bilateral hearing impairment at 250–8,000 Hertz in her right ear; and morbid obesity. Tr. 343. Haight also alleges that these impairments cause her pain and other symptoms. Tr. 208.

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

---

[1] Citations "Tr." refer to pages in the certified transcript of the administrative record filed on May 3, 2016. ECF #12.

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)); 20 CFR §§ 404.1520, 416.920.

At step one, the ALJ determines whether the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b).

At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or combination of impairments that meets the 12-month durational requirement. *Id.* §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c). Absent a severe impairment or combination of impairments, the claimant is not disabled. *Id.*

At step three, the ALJ determines whether the impairment or combination of impairments meets or equals an impairment listed in 20 CFR Pt. 404 Subpt. P, App. 1 (Listing of Impairments). 20 CFR §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d). If the impairment or combination of impairments is determined to meet or equal any listed impairment, the claimant is disabled. *Id.*

If adjudication proceeds beyond step three, the ALJ evaluates medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by her impairments. *Id.* §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine whether the claimant can perform past relevant work. 20 CFR §§ 404.1520(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e). If the claimant cannot perform past relevant work, then at step five the ALJ determines whether the claimant can perform other work in the national economy. *Id.* §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g).

The claimant bears the initial burden of establishing disability. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (quoting *Tackett*, 180 F.3d at 1100)). If the process reaches step five, however, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC. *Id.* If the Commissioner meets this burden, then the claimant is not disabled; otherwise, the claimant is disabled. 20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g).

## ALJ'S FINDINGS

At step one, the ALJ determined that Haight has not engaged in substantial gainful activity since her alleged onset date, April 1, 2009. Tr. 14.

At step two, the ALJ determined that Haight had the following severe impairments: "degenerative disc disease/scoliosis, morbid obesity, and mild-to-moderate hearing impairment bilaterally at 250-8000 Hz." *Id.*

At step three, the ALJ determined that Haight did not have an impairment or combination of impairments that met or equaled any listed impairment. Tr. 15. The ALJ found there was a lack of medical evidence showing Haight's degenerative disc disease/scoliosis met or medically equaled listing 1.04, Disorders of the Spine, because there was "no evidence of nerve root compression, limitation of motion of the spine, and motor loss . . . accompanied by sensory or reflex loss." *Id.* He found Haight's bilateral, mild-to-moderate hearing loss in her right ear did

not meet or medically equal listing 2.08 as the medical evidence did not indicate a speech discrimination score of 40 percent or less in her left ear. *Id.* The ALJ also acknowledged that, while there is no medical listing for morbid obesity, SSR 02-1p requires its effects to be considered when evaluating Haight's limitations. Tr. 15; SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002) (Titles II and XVI: Evaluation of Obesity).

The ALJ next determined Haight's RFC:

> [Haight] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she requires a sit/stand option at will. She is limited to no exposure to workplace noise in excess of that allowable under OSHA regulations at 29 CFR without the use of appropriate hearing protection. When occupational noise is less than proscribed by 29 CFR, the individual's exposure is limited to occasional.

Tr. 15.

At step four, the ALJ determined that Haight's RFC prevented her from performing her past relevant work. Tr. 19.

At step five, based on Haight's age, education, RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Haight was capable of performing work as a basket filler, bench assembler, or assembler, electrical accessories. Tr. 19–20. Accordingly, the ALJ concluded that Haight was not disabled under the Act and rejected Haight's claims for DIB and SSI. Tr. 20.

## **STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and is supported by substantial evidence in the record. 42 USC § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574

F.3d 685, 690 (9th Cir. 2009) (internal quotation marks and citation omitted). Substantial evidence is determined from the entire record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014). In making this decision, the ALJ does not have to discuss all the evidence in the record. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (quoting *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.2003)).

The reviewing court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotation marks and citation omitted). Importantly, the reviewing court "may not substitute its judgment for that of the Commissioner." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

## **DISCUSSION**

Haight contends the ALJ erred by: 1) failing to provide sufficient reasons to discredit her symptom testimony; 2) failing to provide sufficient reasons to reject her treating physician's opinion; and 3) failing to base the step-five findings on substantial evidence. Each argument is addressed in turn below:

**A.  Symptom Testimony**

The Act allows consideration of a claimant's symptom testimony. However, allegations of pain must correspond to a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 USC § 423(d)(5)(A).

The ALJ performs a two-step analysis in deciding whether to accept a claimant's subjective pain or symptom testimony. First, the claimant must provide objective medical

evidence of an impairment that could reasonably produce the pain or symptom. *Lingenfelter*, 504 F.3d at 1035–36; 20 CFR §§ 404.1529(a), 416.929(a). The claimant needs to show only that the impairment "could reasonably have caused some degree of the symptom," and not that the impairment "could reasonably be expected to cause the severity . . . she has alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal quotation marks and citation omitted).

Second, the ALJ must assess the credibility of the claimant's testimony regarding the severity of her pain and symptoms. *Lingenfelter*, 504 F.3d at 1036. The ALJ must provide "specific, clear and convincing reasons" to discount a claimant's testimony. *Id.*; *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").[2]

Haight argues the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony in three respects. Plaintiff's Opening Brief, ECF #20, at 13. First, she argues the medical record does not support the ALJ's conclusion that there was not objective evidence supporting her pain symptoms. *Id.* at 15–16. Second, she argues two of the ALJ's conclusions—that her receipt of unemployment benefits and her potential pecuniary motive in applying for DIB and SSI were damaging to her credibility—were improper. *Id.* at 15–16. Third, she argues the ALJ incorrectly considered her activities of daily living as damaging to her

---

[2] The Commissioner disagrees that the "clear and convincing" standard should control the analysis; instead, arguing "the deferential substantial evidence standard" should control. ECF #22, at 5, n.1. The Ninth Circuit has rejected this argument. *See Burrell v. Colvin*, 775 F.3d 1136–37 (9th Cir. 2014) (holding that absent evidence of malingering, the ALJ must provide "specific, clear and convincing reasons" to reject a claimant's subjective testimony).

credibility. *Id.* at 16. Although the ALJ indeed erred in some respects, he otherwise provided clear and convincing reasons to find Haight's testimony was less than fully credible.

1. **Medical Record**

While a claimant's statements regarding symptom severity "may not be disregarded solely because they are not substantiated by objective medical evidence," the ALJ may use a lack of medical evidence in determining credibility. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks omitted); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). [3]

Here, the ALJ's conclusion that the medical record lacked objective evidence of Haight's pain and symptom testimony is supported by substantial evidence. The ALJ exhaustively summarized Haight's hearing testimony and her medical records from her alleged onset date of April 1, 2009, through her examination by Disability Determination Services ("DDS") physicians on June 30, 2013. Tr. 15–19. The ALJ provided dates, Haight's medical complaints, objective test results, diagnoses, and prescriptions, and importantly, he noted gaps in treatment and an inconsistent prescription history. Tr. 15–19.

The ALJ then explained why this objective evidence did not support Haight's symptom statements, and that the lack of support damaged Haight's credibility regarding those statements. Tr. 18. The ALJ noted that the objective medical evidence was "extremely sparse" and inconsistent with Haight's subjective testimony. Tr. 18. Specifically, the ALJ pointed to four

---

[3] Haight argues this court should apply SSR 16-3p, 2016 WL 1119029 (March 16, 2016) instead of SSR 96-7p in reviewing the ALJ's credibility determination. ECF #20, at 14–15. However, SSR 16-3p does not apply to ALJ decisions made before it went into effect. *See Garner v. Colvin*, 626 F. App'x 699, 701 (9th Cir. 2015) ("[W]e cannot assign error to the ALJ for failing to comply with a regulation that did not exist at the time."); *see also Spain v. Colvin*, No. 6:15-CV-01647-SB, 2017 WL 517795, at *5 (D. Or. Feb. 8, 2017) (declining to apply SSR 16-3p retroactively).

issues. First, Haight's hearing was "accommodated and improved with hearing aids . . . [despite] no loss of speech discrimination." *Id.* Second, there was "no objective evidence that is consistent with [Haight's] alleged 9/10 level [of] back pain." *Id.* Third, nothing in the record suggested that Haight had been "referred for imaging studies, physical therapy, or recently prescribed opiates for pain by her physician" as proof of the lack of consistency between the medical evidence and Haight's testimony. *Id.* And fourth, no imaging substantiating Haight's diagnosis of degenerative disc disease/scoliosis was in the record. Tr. 16. While the record is open to other reasonable interpretations, this court cannot substitute its judgment that of the Commissioner. *Parra*, 481 F.3d at 746.

### 2. Unemployment Benefits

Receipt of unemployment benefits can damage a claimant's credibility if the record shows that she held herself out for full-time work, as doing so is inconsistent with claiming disability under the Act. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161–62 (9th Cir. 2008). Holding oneself out for part-time work, however, is consistent with receipt of DIB and SSI, which only require the inability to work full-time. *Id.*

The distinction is immaterial in this case, however, because it was Haight's inconsistent statements that the ALJ took issue with, specifically that Haight claimed she was unable to work in order to obtain disability benefits, yet she represented she was able to work in order to obtain unemployment benefits:

> The claimant testified that she lost her job –she did not stop working due to any impairment. However, the claimant also testified that she was, in fact, unable to work as of the alleged onset date, but held herself out as able to work in order to collect unemployment benefits for a year-and-a-half. Thus, the claimant has admitted to willfully and intentionally misleading a state agency in order to obtain economic benefits, or, she actually was able to work and is misrepresenting her functional ability at this

>     hearing. Either way, this is significantly damaging to her
>     credibility.

Tr. 18.

The record supports this conclusion. Haight testified she was laid off in April 2009 due to a change in management and that she applied for and received unemployment benefits from Oregon for a year and a half afterwards. Tr. 45–46. To maintain her benefits, Haight testified that she had to go online and provide proof that she was looking for work, including names and phone numbers of employers she contacted.[4] Tr. 46. Further, Haight testified that she was able to work for the 78 weeks she was receiving unemployment benefits. Tr. 47. However, Haight's application for disability benefits dated November 20, 2012, includes an affirmation that she stopped working on April 1, 2009, due to her "disabling condition." Tr. 179. This kind of inconsistency is a clear and convincing reason to find Haight's testimony less than fully credible. *Tommasetti*, 533 F.3d at 1039–40. As such, the ALJ's reliance on it was not in error.

### 3. Pecuniary Motive

The ALJ stated that Haight's application for benefits was "driven by financial considerations – as apparently her application for unemployment was." Tr. 18. The ALJ based this conclusion on the fact that Haight's medical records did not begin until May 13, 2011, over two years after her alleged onset date. Tr. 16, 179, 181, 303–05. Further, the ALJ stated that the May 13, 2011 date coincided with the time period when Haight lost her unemployment benefits. Tr. 17, 45–46.

---

[4] In Oregon, eligibility for unemployment benefits requires an individual to be "able to work, is available for work, and is actively seeking and unable to obtain suitable work." ORS § 657.155(c) (2007). Due to the Oregon Revised Statutes (ORS) publication schedule, the 2007 edition was in effect in 2009 when Haight applied for unemployment benefits. The quoted language appears unaltered in the ORS's 2009 edition—which was in effect while Haight received unemployment benefits in 2010 and 2011—and the 2011 edition.

10 – OPINION & ORDER

The delay between Haight's alleged onset date and the start of her medical records is a factor that the ALJ may consider when determining credibility, as discussed further below. However, whether Haight's motive for her disability claim was pecuniary is immaterial and an improper basis to discredit her subjective testimony. *Hann v. Comm'r Soc. Sec. Admin.*, No. 6:15-CV-01754-HZ, 2016 WL 6647933, at *3 (D. Or. Nov. 9, 2016); *Ratto v. Sec'y, Dep't of Health & Human Servs.*, 839 F. Supp. 1415, 1428–29 (D. Or. 1993). "By definition, every claimant who applies for Title II benefits does so with the knowledge—and intent—of pecuniary gain. That is the very purpose of applying for Title II benefits." *Ratto*, 839 F.Supp. at 1428. As such, the ALJ's reliance on Haight's pecuniary motive was in error.

    **4.**    **Activities of Daily Living**

An ALJ should consider activities of daily living "that are transferable to a work setting" in determining a claimant's credibility. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). However, "[t]he ALJ must make specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks and citation omitted); *see also Morgan*, 169 F.3d at 600 (the ALJ must make "a specific finding" regarding transferability in order to properly discredit a claimant's testimony).

Here, the ALJ did not make the required specific findings. Haight's daily activities were caring for her daughter, cooking, cleaning, performing other household chores, watching television, listening to music, reading, and walking around the mobile home park. Tr. 17–18, 50–55. Haight testified she could walk around outside for at least half an hour. Tr. 40. However, she had to take frequent breaks due to her alleged pain while cleaning and cooking. Tr. 40, 51–52.

11 – OPINION & ORDER

The ALJ stated only that Haight's activities of daily living "indicate[] that she is far more capable" than alleged. Tr. 18. At no point did the ALJ draw a connection between Haight's daily activities and her ability to work, nor is there any discussion regarding the transferability of Haight's daily activities to a work setting. This general conclusion does not meet the specificity requirement set out by the Ninth Circuit in *Morgan v. Commissioner*, 169 F.3d 595 (9th Cir. 1999), and *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). As such, the ALJ erred.

5.      **Frequency and Extent of Treatment**

The Commissioner argues that the ALJ offered another reason for finding Haight's testimony less than fully credible: the difference between the "frequency and extent of treatment" that Haight sought. ECF #22, at 8. In support, the Commissioner points to: (1) the discrepancy between Haight's alleged onset date and the start of the medical record, and (2) the fact that Haight did not seek additional treatment for her back pain for over a year after her initial complaint. *Id.*; Tr. 16, 18.

In determining credibility, the ALJ may rely on the claimant's "unexplained or inadequately explained failure to seek treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012); *see also Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (the ALJ's consideration of claimant waiting nine months after being laid off to seek medical aid was a sufficient reason for disregarding the claimant's testimony).

Haight's claims her alleged onset date is April 1, 2009, but the medical record began on May 13, 2011. Tr. 16. Haight does not remember how the April 2009 date became the alleged onset date in her DIB or SSI applications. Tr. 48. The fact that Haight did not seek treatment between April 2009 and May 2011 is "powerful evidence" that Haight's pain was not severe. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (it is "powerful evidence" against

claimant's symptom severity testimony when the claimant did not seek some treatment). Haight failed to seek treatment again for her back pain between May 13, 2011, and October 3, 2012, and provided no explanation for her failure to do so. Tr. 288–90, 303–05. These unexplained failures to seek treatment are clear and convincing reasons for rejecting Haight's testimony.

In sum, although the ALJ erred in considering Haight's activities of daily living and should not have considered Haight's motive of pecuniary gain in seeking DIB and SSI, he provided additional clear and convincing reasons to find Haight's testimony was less than fully credible. *Carmickle v. Commissioner*, 583 F.3d 1155, 1163 (9th Cir. 2008). Therefore, this court accords deference to the ALJ's conclusion that Haight's testimony was less than fully credible.[5] *See Carmickle*, 533 F.3d at 1162–64 (when the ALJ provides valid reasons supported by substantial evidence, despite also relying on invalid reasons, the ALJ will have shown that he "had a proper basis" to make a negative credibility determination).

## B.  Treating Physician's Opinion

The Ninth Circuit distinguishes medical opinions based on whether a treating physician, examining physician, or reviewing physician is the author. *Garrison*, 759 F.3d at 1012; 20 CFR §§ 404.1527(c), 416.927(c). A treating physician's opinion is granted greater weight than an examining physician's, which is granted greater weight than a reviewing physician's opinion. *Id.*

The ALJ may rely on a nontreating physician's opinion when it conflicts with the treating physician's opinion if he provides "specific and legitimate reasons supported by substantial evidence in the record." *Holohan*, 246 F.3d at 1202 (internal quotation marks omitted). In doing

---

[5] The court also notes that, although the ALJ did not consider Haight's testimony fully credible, he did not discount it entirely and incorporated Haight's testimony in the RFC determination Haight's RFC requires that she be allowed to sit or stand whenever needed and not be exposed to excessive noise without hearing protection, and limits her exposure to noise that is not excessive without hearing protection. Tr. 15.

so, the ALJ is not required to discuss all the evidence in the record. *Hiler*, 687 F.3d at 1212. However, the ALJ is required to provide "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valentine*, 574 F.3d at 690 (internal quotation marks and citation omitted).

On May 20, 2014, Dr. Sarver completed a RFC questionnaire in which he opined that Haight would miss three to four workdays per month due to her symptoms, that she would need unscheduled breaks during the workday to relieve her symptoms, and that she would be off task up to 25% on a typical workday. Tr. 343–44. The ALJ gave Dr. Sarver's questionnaire responses little weight because they were "inconsistent with his medical records" and Dr. Sarver's examination of Haight "found little to no objective limitations due to [her] degenerative disc disease, obesity, or other non-severe impairment." Tr. 19. In comparison, the ALJ granted some weight to the opinion of DDS' reviewing physician Dr. Richard Alley, M.D., because it accounted for Haight's physical impairments, despite not including any environmental limitations for Haight's hearing loss. Tr. 18. Dr. Alley opined that Haight could: sit, stand, or walk for six hours, with normal breaks, in an eight-hour workday; occasionally lift and carry up to 20 pounds, and frequently lift and carry up to 10 pounds in an eight-hour workday; and had no postural, manipulative, visual, communicative, or environmental limitations. Tr. 100.

Haight argues that the ALJ's reasoning was not sufficiently specific because he "did not state which medical records, which examinations, and what objective limitations were missing" from Dr. Sarver's opinion. ECF #20, at 11. To the contrary, the ALJ specifically stated that Dr. Sarver's questionnaire responses were "inconsistent with his medical records." Tr. 19. In particular, the ALJ noted that at Haight's July 2013 exam, she complained of 9/10 pain, yet Dr. Sarver did not prescribe narcotics for her, refer her to physical therapy, or prescribe any

treatment at all for that matter.[6]  *Id.*  The ALJ concluded "[t]his is inconsistent with [Dr. Sarver's] opinion that the claimant would require all of the restrictions listed" by Dr. Sarver.  *Id.*  Inconsistency with the medical record is a specific and legitimate reason to give less weight to a treating physician's opinion.  *Tommasetti*, 533 F.3d at 1040–41.

Haight also argues the ALJ failed to consider the medical record as a whole.  ECF #20, at 13.  The ALJ, however, did consider and discuss other medical records in an earlier part of his decision.  The ALJ noted that the first instance of Haight's back pain symptoms occurred in May 2011, but was accompanied by normal posture and back range of motion, and Haight passed a straight leg test.  Tr. 16, 304.  He further noted that Haight's diagnosis of a degenerative disk disease/scoliosis in October 2012 was not accompanied by supporting imaging.  Tr. 16, 285–90.  Haight's back pain did not resurface in the medical record again until July 2013.  Tr. 17, 336–37.  However, the ALJ pointed out that Haight's physical exam at that time showed normal gait and posture, normal bilateral lower extremity strength, and no lower extremity tenderness, deformity or mass.  Tr. 17.  As the ALJ observed, "[t]here were no objective signs consistent with the claimant's extreme pain allegations," and Haight "had no additional complaints regarding her back through April 25, 2014.  *Id.*

Because the ALJ provided specific and legitimate reasons for rejecting Dr. Sarver's opinion, and those reasons are supported by substantial evidence in the record, the ALJ did not err in rejecting Dr. Sarver's opinion.

///

---

[6] The ALJ noted that "Dr. Sarver's objective exam was normal.  Tr. 17.  This is not entirely accurate, as the medical record shows a "spine/ribs/pelvis" abnormality.  Tr. 17, 336–37.  It does not change the analysis, as there are other inconsistencies in Dr. Sarver's medical records that support the ALJ's decision.

## C. The ALJ's Step-Five Findings

At step five, the Commissioner has the burden of proving there are jobs the claimant may perform based on her RFC in a "significant number" in the national economy. If not, then the claimant is disabled. *Bowen v. Yuckert,* 482 U.S.137, 141–42 (1987); 20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g). The ALJ can meet this burden by relying on the Medical Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2, or a VE's testimony. 20 CFR §§ 404.1566, 416.966. A VE's testimony involves answering hypothetical questions involving an individual with the claimant's impairments and RFC to determine: (1) if there are jobs the claimant can do given her limitations and RFC; and (2) the availability of those jobs national economy. *Garrison*, 759 F.3d at 1011 (quoting *Tackett*, 180 F.3d at 1101).

Here, the ALJ relied on a VE's testimony. Tr. 20. The ALJ presented the VE with a hypothetical individual with a high-school education. Tr. 67. The ALJ further limited the hypothetical individual in various ways based on the evidence in the record: the level of work that could be performed, a noise-level restriction based on OSHA regulations, and a sit/stand option, among other limitations. Tr. 67–70. In response, the VE provided two jobs the hypothetical person could perform at light work: bench assembler and assembler, electrical accessories. Tr. 68. The VE also mentioned a third job at light work—basket filler—but eliminated that job when the ALJ added the at-will sit/stand option. Tr. 68, 72 (Haight's RFC required this option).

Haight argues that the ALJ's inclusion of the basket-filler job in his decision was in error because the VE's testimony eliminated that position with the sit/stand limitation. ECF #20, at 18. The Commissioner agrees that the ALJ incorrectly included the basket-filler job, but argues

that the inclusion was harmless because the ALJ included two other occupations with a significant number of jobs. ECF #22, at 17–18.

There is no bright-line rule regarding what is and is not a significant number of jobs in the Ninth Circuit, but "a comparison to other cases is instructive." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). For example, in other cases, the Ninth Circuit has held that 1,266 and 1,300 regional jobs are significant. *Thomas v. Barnhart*, 278 F.3d 947 (9th Cir.2002); *Barker v. Secretary of Health & Human Services*, 882 F.2d 1474, 1479 (9th Cir.1989). Here, by comparison, there are 4,400 Oregon and 137,000 national jobs for bench assembler and 3,500 Oregon and 140,900 national jobs for assembler, electrical accessories. Even if the 1,550 Oregon and 187,135 national jobs for basket filler are excluded, the remaining number of jobs is significant. The ALJ's erroneous inclusion of the basket filler job, therefore, is harmless. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (harmless error exists if "the mistake was . . . irrelevant to the ALJ's ultimate disability conclusion").

Haight also contends that the noise intensity levels listed in the DOT for bench assembler and assembler, electrical accessories, are not consistent with her RFC. *Id.* at 19. The RFC states that Haight "is limited to no exposure to workplace noise in excess of that allowable under OSHA regulations at 29 CFR *without the use of appropriate hearing protection. When occupational noise is less than that proscribed* by 29 CFR, [Haight's] exposure is limited to occasional."[7] Tr. 15 (emphasis added).

---

[7] OSHA regulations limit occupational noise exposure to 90 decibels (dBa) per hour in an 8-hour workday. 29 CFR § 191095(a). If occupational noise exceeds that limit, employers must provide hearing protection. In addition, employers must administer a hearing conservation program when occupational noise exposure exceeds 85 dBa per hour in an 8-hour workday—this program also requires employers to provide hearing protection. 29 CFR § 1910.95(c) & (i)(1).

17 – OPINION & ORDER

The RFC does not, as Haight contends, "call[] for exposure to *any* occupational noise to less than occasional." ECF #20, at 19 (emphasis added). Nor does it state Haight cannot use hearing protection when occupational noise is under the limit set by OSHA regulations. Instead, the RFC mandates when Haight *must* use hearing protection. Whether or not the noise levels of bench assembler or assembler, electrical accessories, exceed the limit set by OSHA is immaterial. If occupational noise in either line of work exceeds the OSHA limit, then Haight must use hearing protection. If occupational noise does not exceed the OSHA limit, then Haight's exposure to occupational noise *without* hearing protection is limited to occasional.

In sum, the ALJ relied on the VE's opinion, which was based on 30 years of professional experience. Tr. 70. The VE certified his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). *Id.*; *Massachi v. Astrue*, 486 F.3d 1149, 1150 (9th Cir. 2007) (an ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT). The VE testified that the jobs of bench assembler and assembler, electrical accessories, would allow for a sit/stand option and fell within the other hypothetical limitations. Tr. 68–71. The ALJ's inclusion of bench assembler and assembler, electrical accessories, in step five is based on substantial evidence, and is therefore accorded deference.

///

///

///

///

///

///

## CONCLUSION

Because the ALJ gave specific, clear and convincing reasons for discrediting Haight's testimony, provided specific and legitimate reasons for rejecting the medical opinion of Haight's treating physician, and did not err at step five of the sequential analysis, he did not err. The Commissioner's final decision denying Haight's DIB and SSI applications is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 14th day of April, 2017.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge